IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                                   No. CR. 1:12-1606 JCH

JUSTIN WOLAVER[1],

                Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR COMPASSIONATE RELEASE

This matter is before the Court upon Defendant's Motion for Compassionate Release filed February 5, 2021. ECF No. 22. The Court has considered the Motion, the United States' Response to Defendant's Motion, ECF No. 24, Defendant's Reply, ECF No. 27, and the Presentence Investigation Report ("PSR").

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On July 27, 2012, Defendant pled guilty to a three-count Information including Counts 1 and 2, Armed Bank Robbery, contrary to 18 U.S.C. § 2113(a) and (d), and Count 3, Bank Robbery, contrary to 18 U.S.C. § 2113(a). PSR ¶ 5. Based on the "Offense Conduct" as found in the PSR, the first armed robbery occurred in Hudson, Florida on May 2, 2011. *Id.* at ¶¶ 7-19. The second robbery occurred in Flagstaff, Arizona on May 9, 2011. *Id.* at ¶¶ 12 and 20. The third robbery,

---

[1] Defendant was convicted under the name Justin Wolaver and at the time of Defendant's crimes, plea hearing, and sentencing hearing, Defendant presented as male. However, according to Defendant's motion, Defendant is a transsexual in the process of transitioning to female and prefers the use of feminine pronouns. For the purposes of this Memorandum Opinion and Order, the Court will honor this request.

again an armed robbery, occurred in Raton, New Mexico on May 23, 2011. PSR at ¶ 13. Defendant was arrested after the third bank robbery on May 23, 2011, in Colfax County, New Mexico. PSR at ¶ 1. Defendant has been in continuous custody since the date of her arrest in 2011. PSR 1 and ECF No. 22 at 2.

In February 2021, Defendant filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) asserting there are exceptional circumstances that warrant her release. ECF No. 22. Defendant asserts these circumstances include the facts that (1) she is transitioning from living as a male to living as a female, ECF No. 22 at 6-9, and (2) she has an underlying health condition that puts her at risk of serious illness or death if exposed to coronavirus while incarcerated. *Id.* at 9-13.

The United States opposes Defendant's Motion, arguing that Defendant's health concerns and transgender status are not extraordinary and compelling circumstances warranting relief and that Defendant is a danger to the community. ECF No. 24.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

As a preliminary matter, the Court finds that the Defendant has exhausted the required administrative remedies. Under 18 U.S.C. § 3582(c)(1)(A), a defendant may file a motion with a district court only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Here, Defendant submitted an administrative request on May 8, 2020. ECF No. 22-1 at 2-3. Warden Henger denied Defendant's request on May 13, 2020. *Id.* at 1. Thus, the exhaustion requirement has been met.

## III. LEGAL ANALYSIS

The Court analyzes motions for compassionate release pursuant to *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021), which sets out a three-step test to analyze whether compassionate release is justified. The Court may grant a defendant's motion for a reduced sentence if the court finds that: (1) extraordinary and compelling reasons warrant a sentence reduction; (2) the sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the reduction is consistent with the district court's consideration of the 18 U.S.C. § 3553(a) factors. *McGee* 992 F.3d at 1042. District courts may deny compassionate release motions when any one of the three steps is lacking, and do not need to address the others. *Id*. at 1043. But when a district court grants a motion for compassionate release, "it must of course address all three steps." *Id*.

    A.  <u>Extraordinary and Compelling Reasons</u>

There are four categories of extraordinary and compelling reasons for which a defendant may be potentially eligible for compassionate release, provided that the defendant is not a danger to the safety of the community. U.S.S.G. § 1B1.13 cmt. n.1. Those conditions include a defendant's medical condition, age, family circumstances, and a catch-all category for "other reasons." *Id*.; *see United States v. Gieswein*, 832 F. App'x 576, 577 (10th Cir. 2021). Defendant asserts that she qualifies for release based on two extraordinary and compelling reasons; (1) because she is transitioning from living as a male to living as a female, ECF No. 22 at 6-9, and (2) because she has an underlying health condition that puts her at risk of serious illness or death if she is exposed to coronavirus while incarcerated. *Id*. at 9-13. The Court addresses each in turn.

    1.  <u>Defendant's Status as a Transgender Inmate Does Not Warrant Compassionate Release.</u>

Defendant was sentenced and committed to the Bureau of Prisons ("BOP") on December 17, 2012 for a term of 180 months. ECF No. 11. According to Defendant, while incarcerated she "discovered [she] was transgender." ECF No. 19 (letter from Defendant to the Court seeking a reduction in sentence). Over two years ago and while under the care of BOP, Defendant began the process of transitioning from a male to a female. *Id.* The BOP has made certain accommodations that are consistent with the BOP's Transgender Offender Manual ("Manual") including granting her access to hormones, including estradiol,[2] ECF No. 22-2 at 1, and allowing her to have access to women's undergarments. *Id.* at 3; *see* BOP, Transgender Offender Manual, 5200.08 (2022) and Transgender Offender Manual, 5200.04 (2017). Defendant, who now refers to herself as "Ally," and prefers the pronouns "she/her," ECF No. 22 at 1, asserts that life as a transgender inmate—particularly as a female in a men's prison—is traumatizing and dangerous. ECF No. 22 at 6-9. Defendant states that she lives each day in fear of sexual and physical assaults and provides citations to sources that affirm the high rates of such assaults on transgender inmates. *Id.* at 7-8. Defendant asks the Court to rely on the "catch-all" category as found under the comments of the sentencing guidelines to grant her compassionate release. *Id.* at 4.

The Court is not apathetic to Defendant's struggles and fears while serving the remainder of her 180-month sentence as a transgender female in a men's prison. The Court recognizes, however, that the BOP has recently updated the policies and procedures to address the challenges and concerns that a transgender inmate may face.[3] Defendant's status, while unusual, is not a

---

[2] Estradiol is an estrogen formulation that has served "as an off-label treatment option for male-to-female transgender patients." Lana Hariri & Anis Rehman, Estradiol, National Library of Medicine; National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK549797/ (last accessed July 26, 2022).

[3] The most recent, publication of the BOP, Transgender Offender Manual, 5200.08 (January 13, 2022), offers enhanced protections for transgender inmates, compared to the policies that were in

solitary case, and the BOP has put forth much consideration to manage this special population of inmates in the most appropriate and safe manner. The guidelines provide for specific protocols that the facilities should follow to include in limited part, giving transgender inmates the opportunity to shower separately from other inmates when individual shower stalls are unavailable, giving serious consideration to a transgender inmate's own views with respect to safety when making housing unit and programming assignments, providing for protocols to transfer an inmate to a different sex facility (if the inmate meets all the criteria and is approved by the Warden), and providing an opportunity for inmates to pursue gender affirming surgery. Manual, 5200.08 (2022). The 2022 Manual is thorough and specific. Therefore, if administrators and staff follow the policies and protocols contained therein (and at this point, the Court has not been presented with evidence that BOP is not following these policies), the threat and danger to transgender inmates should be significantly reduced. It appears that there are avenues that Defendant may pursue under the BOP Manual to make her life in prison safer and more comfortable given her unique needs. Defendant does not assert that she has attempted to pursue any of the remedies as provided therein.

Accordingly, under the facts presented here Defendant's status as a transgender female housed in a men's prison is not an extraordinary and compelling circumstance that causes the Court to grant compassionate release.

2. <u>Defendant's Medical Condition Does Not Warrant Compassionate Release.</u>

---

place in the 2017 version of the Manual. *See* BOP, Transgender Offender Manual, 5200.04 (Jan. 18, 2017). *See also, e.g.*, Michael Balsamo & Mohamed Ibrahim, <u>Justice Department reviewing policies on transgender inmates</u>, ABC News Online (September 17, 2021), https://abcnews.go.com/Politics/wireStory/justice-department-reviewing-policies-transgender-inmates-80073893 (comparing the differences between the 2017 Manual and the 2022 Manual).

Defendant also states that because of her underlying health condition—her "documented bronchitis"—she is at risk of serious illness or death if she is exposed to COVID-19 while incarcerated. ECF No. 22 at 9.

To begin with, the Court notes that the existence of COVID-19, in and of itself, is not enough to warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, bronchitis is not a condition that has been found by the CDC to result in a greater risk of COVID-19 complications. *See* Center for Disease Control, *COVID-19, People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 26, 2022).

Furthermore, the BOP has issued a Program Statement that sets forth specific criteria that may be considered when a defendant brings a motion for compassionate release based on a terminal or debilitating medical condition. BOP, Program Statement, 5050.50 (2019) https://www.bop.gov/policy/progstat/5050_050_EN.pdf. Under the criteria for a debilitating medical condition, a defendant may be considered for compassionate release only if she has "an incurable, progressive illness" or has "suffered a debilitating injury from which they will not recover." *Id.* at 4. The BOP will consider whether an inmate is "completely disabled, meaning the inmate cannot perform any self-care and is totally confined to a bed or chair; or is capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." *Id*. at 5. Defendant has not shown that she meets these criteria due to her bronchitis.

Therefore, the Court cannot find that Defendant's bronchitis, combined with the ongoing COVID-19 pandemic, is enough to warrant compassionate release. Finally, even if Defendant did have medical conditions that created extraordinary and compelling circumstances, that alone

would not warrant compassionate release. The Court must analyze a motion for compassionate release under the 18 U.S.C. § 3553(a) factors. *McGee*, 992 F.3d at 1042.

### B. § 3553 Factors

In accordance with the *McGee* analysis the Court is required to consider whether compassionate release is consistent with the § 3553(a) factors. Under 18 U.S.C. § 3553(a), in addition to the nature and circumstances of the offense, the Court considers the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant, among other factors. The Government asserts that Defendant "has an extensive violent criminal history, including a crime of violence by robbing a bank while armed twice[.]" ECF No. 24 at 2. The Court considered these factors at sentencing, does so again here, and agrees with the Government.

The Court looks first to the nature and circumstances of the offense, which weigh the most heavily against compassionate release. Defendant's crimes are of a violent nature. Defendant plead guilty to a three-count Information where the counts were as follows: Counts 1 and 2, Armed Bank Robbery, contrary to 18 U.S.C. § 2113(a) and (d), and Count 3, Bank Robbery, contrary to 18 U.S.C. § 2113(a). PSR ¶ 5. During the third armed robbery—which took place at a bank in Raton, New Mexico—Defendant allegedly displayed a handgun upon her approach to the teller window and demanded money, which was given to her. *Id.* at ¶ 13. After Defendant fled, she subsequently engaged police on a high-speed chase endangering other vehicles and police officers during the pursuit. *Id.* at ¶ 14. While being pursued by police, Defendant began to throw things out of the

vehicle and held a long black rifle out of the driver's side window and pointed it at police officers multiple times. *Id*.

When Defendant was finally apprehended and later questioned by the Federal Bureau of Investigators ("FBI"), it was determined that she was wanted in Florida for a bank robbery that occurred earlier in the same month, on May 2, 2011. *Id.* at ¶¶ 16 and 17. Through the FBI's further investigation it was also determined that Defendant was responsible for a 2011 bank robbery in Flagstaff, Arizona. *Id.* at ¶ 23. The crimes of which Defendant was convicted in this case were violent and therefore weighs heavily against early release.

The Court also takes note of Defendant's prior criminal history as included in the PSR. According to the PSR, Defendant was previously convicted of (1) Burglary of a Dwelling, for which she was sentenced to 25.8 months imprisonment, *Id.* at ¶ 60, and (2) Attempted Robbery with a Deadly Weapon, for which she was sentenced to 25.8 months imprisonment, *Id.* at ¶ 61. Both crimes were prosecuted in Hernando County Circuit Court, Brooksville, Florida. These crimes are both crimes of violence and show that Defendant has not hesitated to use firearms to threaten or intimidate other people to obtain her desired outcome.

At sentencing the Court considered Defendant's total offense level of 31, and her criminal history category of III. *Id*. at ¶¶ 57 and 63. According to the PSR Defendant is classified as a career offender. *Id*. at ¶ 64. The Guideline imprisonment range was 188 months to 235 months. *Id.* at ¶ 111. However, pursuant to an agreement between the Government and Defendant, on December 17, 2012, the Court imposed a sentence of 180 months. *Id.; see also* ECF No. 11. Defendant's sentence also included five years of community supervision upon release from imprisonment. ECF No. 11 at 5. At the end of 2022, Defendant will have completed 11 years of her 15-year sentence.

Defendant committed violent crimes that put individuals and communities in multiple states at risk, and the sentence imposed reflects that fact. To abbreviate Defendant's sentence to far less than the guideline imprisonment range would not be consistent with the nature of the crimes she committed. Truncating Defendant's sentence at this point would not promote respect for the law; to the contrary, it would undermine it. The Court is not willing to release Defendant early when historically her criminal behaviors have posed a danger to the safety of the public and there is no guarantee that this time would be any different. In short, the § 3553 factors weigh heavily against granting Defendant's Motion.

Analyzing the nature and circumstances of Defendant's offense, her criminal history, the need to afford adequate deterrence to criminal conduct, and importantly to protect the public from further crimes by Defendant, the Court concludes that Defendant is not a candidate for compassionate release.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 22, is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE